GEORGE A. BUCKNAM *versus* HEIRS OF THOMAS F. BUCKNAM.

After a verdict in a writ of entry has been rendered, and the evidence of the title is reported, with the agreement that the verdict may be amended according to the evidence, and the evidence does not enable the Court satisfactorily to determine the exact proportion to which the plaintiff is entitled, the verdict will not be vacated or changed.

Where a person entered upon land by license of one of the owners in common, and erected and occupied a building upon it, he must be considered as holding in submission to the title of such owner, until the contrary is proved.

THIS was a writ of entry. The jury returned a verdict for the demandant for one sixth of the demanded premises. The facts necessary to an understanding of the case, sufficiently appear in the opinion of the Court.

*Hobbs*, for demandant.

*Fuller*, for tenants.

SHEPLEY, C. J. — Since the trial the demandant and tenant have both deceased ; and their heirs at law, according to the provisions of the statute have been admitted as parties to prosecute and defend the action. The demandant in his writ claimed to recover one undivided fifth part of that tract of land, upon which the tenant had erected a dwellinghouse and out buildings occupied by him. By an amended declaration he claimed to recover the whole of the same tract, describing it by boundaries, and also a tract upon which a blacksmith's shop was standing. No question is presented respecting the amendment. A verdict for one undivided sixth part was found for the demandant.

The case is presented by a report of the testimony and documents with an agreement, that the verdict may be amended, so as to enable the demandant to recover for such proportion as he may be entitled to.

It appears from a division of the estate of John Bucknam, bearing date on December 22, 1795, but not accepted in the court of probate until June, 1799, that there was a tract of land situated in the town of Columbia, on both sides of Pleasant river, containing two acres and one hundred and nine square rods, laid out for the benefit of the mill owners, which had been reserved for that purpose from the time when mills were first erected in that place. It is admitted, that John Bucknam and his wife were the owners of all the mills and privileges. It would seem probable from the division of the estate of the husband, and from the conveyances made by the widow, that the husband owned two-thirds of the privilege and of the corn-mill, and the whole of a double sawmill then upon the privilege, and that the wife owned one-third of the privilege and of the corn-mill, in her own right. Yet this is not made certain. The original demandant, by the division of his father's estate, acquired title to " two one and twentieth parts" of the whole tract reserved for the use of the mills.

After the decease of his mother and the decease of his brother John and sister Mary, both of whom are admitted to

have died without issue, another division was made among their heirs, in the year 1816, which was accepted in the court of probate in the month of June, 1818. By this he acquired title to one-sixth of that seventh part of the saw-mills and privileges assigned to his brother John in the former division, and also to the whole seventh of two-thirds of the corn-mill, which had been assigned to the same deceased brother. Mary Bucknam, his mother, conveyed, by deed bearing date on April 25, 1801, to Gowen Wilson, " the privilege of the one-third of the single saw-mill," with certain rights or privileges of enjoyment ; and also, " one third of the corn-mill privilege for a corn-mill, where the said mill now stands, on Pleasant river," with certain rights of enjoyment. She also conveyed to Joseph Wilson by deed, bearing date on April 16, 1803, another like third of the privilege of the single saw-mill. The original demandant claimed, and probably may have secured to himself by mesne conveyances and by inheritance, the titles thus conveyed to the two Wilsons. It would seem, that the single saw-mill must have been erected after the decease of the first John Bucknam. By whom it was erected, and to what proportion the owner of it was entitled in the whole tract reserved for a privilege, does not appear. It may have been erected by or under the title of the widow to one-third of that tract. It will be perceived, therefore, that without other evidence it cannot with certainty be determined, what proportion of that tract was conveyed by the widow to the Wilsons. And what was intended to be conveyed by the use of the words, " one-third of the corn-mill privilege for a corn-mill, where the said mill now stands," may be uncertain without a more definite knowledge of the rights of the grantor and of the circumstances, under which the conveyance was made.

The counsel for the demandant contends, that he has exhibited a good title to twenty-seven and a half eighty-fourth parts of the whole tract. In this calculation, by the proportion of each mill conveyed, whether it be corn-mill, double saw-mill, or single saw-mill, the grantee is regarded as having acquired title to an equal proportion of the whole tract reserved for the

use of the mills.   This may be so, but the testimony intro-
duced in behalf of the demandant shows, that the tract de-
manded in this suit had been used by the owners of the saw-
mills as a place for piling logs from thirty to fifty years.   This,
taken in connection with the phraseology used in the convey-
ance of a proportion of the corn-mill privilege, may be suffi-
cient, if the whole facts were disclosed, to show that a
conveyance of a portion of the corn-mill privilege or of the
single mill might not convey an equal portion of the whole
tract.

The counsel for the tenant's heirs contends, that the original
demandant had not exhibited a good title to more than the
one undivided sixth part found by the jury.   This calculation
is however founded upon a position apparently erroneous, that
John Bucknam was the sole owner of all the mills and water
power, and that his widow had no rights except those derived
from him.

Considering that the testimony of the witnesses and the
documents presented do not enable the Court satisfactorily to
determine the exact proportion, to which the original demand-
ant was entitled, it has been thought best not to amend the
verdict of the jury, especially as a verdict in this case, and
judgment upon it, would have no effect upon the title as it
respects other parties, and the tenant does not appear to have
had any legal title to any portion of the tract reserved for the
use of the mills.

The tenant claimed to have the value of the improvements
made by him upon the demanded premises assessed by the
jury.   The counsel for the heirs of the tenant does not con-
tend, that the instructions on this point were erroneous, while
he insists, that the verdict should be set aside, because the
testimony tending to prove, that the tenant was not entitled
to have the jury find in his favor, did not apply to the black-
smith's shop.   This is found to rest principally upon a misap-
prehension of the counsel, that the shop was erected before
the other buildings.   Albert Keene, a witness introduced by
the tenant, testified, that the house was built twelve or thirteen,

and the blacksmith's shop, nine years since. If the tenant entered by license of one of the tenants in common and built the building for a store, which has since been finished and occupied as a dwellinghouse, he must be considered in all *his* subsequent acts as performing them in submission to that title, until the contrary is established by proof.

There is moreover little occasion to set aside the verdict upon this point, as the heir of the demandant has given consent in writing, that the heirs of the tenant may remove all the buildings erected by their father.

**Judgment on the verdict.**